**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────────────────

**PATRICE CHAMBERS LANE, on behalf of S.A.H.,**

                **Plaintiff,**

   vs.                                   **3:12-CV-1407 (NAM)**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**

─────────────────────────────────────────────

**APPEARANCES:**                      **OF COUNSEL:**

Jaya Shurtliff, Esq.
Law Offices of Kenneth Hiller
6000 North Bailey Avenue, Suite 1A
Amherst, New York 14226
For Plaintiff

Hon. Richard S. Hartunian, United States Attorney
Elizabeth Rothstein, Esq., Special Assistant United States Attorney
Social Security Administration
Office of Regional General Counsel, Region II
26 Federal Plaza - Room 3904
New York, New York 10278

**Norman A. Mordue, Senior U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

On November 3, 2008, plaintiff filed an application for supplemental security income ("SSI") on behalf of her son, SAH, who was then ten years old. T.10.[1] Plaintiff claimed that SAH suffered from attention deficit hyperactivity disorder ("ADHD"), eczema and asthma. On May 19, 2010, a hearing was held before Administrative Law Judge ("ALJ") Bruce S. Fein; plaintiff and SAH testified. On November 2, 2010, the ALJ issued a decision denying plaintiff's claim for

---

[1] "(T.)" refers to pages of the Administrative Transcript, Dkt. No. 7.

benefits. T.12. The Appeals Council denied plaintiff's request for review. Plaintiff, on SAH's behalf, brought this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, and asks the Court to reverse the Commissioner's decision to deny disability benefits and remand for a calculation of benefits. Presently before the Court are the parties' cross-motions for judgment on the pleadings. Dkt. Nos. 12, 13.

## II.   DISCUSSION

Plaintiff argues: (1) that the ALJ did not use the proper legal standard when evaluating the opinion of plaintiff's treating social worker, Maureen Moretin, LCSWR; (2) that the ALJ erred in finding that SAH has a less than marked limitations in the domain of "Caring for Yourself"; and (3) that the ALJ improperly discounted her credibility.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

The Social Security Act defines a child, an individual under the age of eighteen, as disabled and eligible for SSI benefits: "if he has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). There is a three-step evaluative process to determine whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *Kittles ex rel. Lawton v. Barnhart*, 245 F.Supp.2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v.*

2

*Barnhart*, No. 02Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003). The first step of the test, which bears some similarity to the familiar, five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp.2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(c)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, then the second step requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are severe – that is, which causes more than a minimal functional limitation. 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp.2d at 488; *Ramos*, 2003 WL 21032012, at *7. If the existence of a severe impairment is discerned, the agency must next determine whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth by regulation, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). *Id.* Equivalence to a Listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles*, 245 F.Supp.2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability, and the twelve month durational requirement is satisfied, the child will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Under the Social Security Regulations (the "Regulations"), analysis of functionality is performed by consideration of how a claimant functions in six areas which are denominated as "domains," and described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The functional domains include:

> (I) [a]cquiring and using information;
> (ii) [a]ttending and completing tasks;
> (iii) [i]nteracting and relating with others;
> (iv) [m]oving about and manipulating objects;
> (v) [c]aring for [oneself]; and
> (vii) [h]ealth and physical well-being.

20 C.F.R. § 416.926a(b)(1). A finding of disability is warranted if a "marked" limitation, defined as when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," 20 C.F.R. § 416.926a(e)(2)(I), is found in two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. Functional equivalence also exists in the event of a finding of an "extreme" limitation, meaning "more than marked," representing an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," and this rating is only "give[n] to the worst limitations". 20 C.F.R. § 416.926a(e)(3)(I); *see also Morgan v. Barnhart,* No. 04Civ.6024, 2005 WL 925594, at *11 (S.D.N.Y. Apr. 21, 2005).

### A. ALJ's Decision

Using the three-step disability evaluation, at step one, the ALJ found that SAH has never engaged in any substantial gainful activity. T.13. At step two, the ALJ concluded that SAH has the following severe impairments: ADHD; eczema; and asthma. T.13. At step three, the ALJ found D.H.'s impairments did not meet, medically equal, or functionally equal any of the listed, presumptively disabling conditions set forth in Appendix 1 of the Regulations. T.14. The ALJ weighed the opinions of SAH's fifth grade teacher, SAH's treating social worker, the state agency review psychiatrist and pediatrician, the consultative psychologist and consultative physician. T.16-18. The ALJ assigned no more than "little weight" to any opinion. T.16-18. The ALJ then evaluated SAH's functional abilities in the six domains established by 20 C.F.R. § 416.926a(b)(1)

4

and found that: he had a marked limitation in the domain of interacting and relating with others; he had "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, caring for yourself, and health and physical well-being; and he had no limitation in the domain of moving about and manipulating objects. T.18, 20-25. Finding that SAH had a marked limitation in one domain, the ALJ concluded that he was not disabled. T.25.

**B.      Social Worker**

Plaintiff argues that the ALJ committed legal error when he deemed treating social worker Maureen Moretin, LCSWR, a "nonmedical source" instead of a "medical source". Social Security Ruling 06–03p designates licensed clinical social workers as "[m]edical sources who are not 'acceptable medical sources'".[2] SSR 06-03. "Non-medical sources" include, among others, "school teachers, counselors" and "social welfare agency personnel". *Id*. at *2. SSR 06-03p refers to "[m]edical sources who are not 'acceptable medical sources'" and "[n]on-medical sources" jointly as "other sources". *Id*. Although information from "these 'other sources' cannot establish the existence of a medically determinable impairment," it "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06–03p, 2006 WL 2329939, at *2 (Soc.Sec.Admin. Aug. 9, 2006).

In his decision, the ALJ referred to Ms. Moretin as a "nonmedical source". As stated, the definitions in SSR 06-03p, however, specify that a licensed social worker is a "medical source" who is not an "acceptable medical source". Plaintiff argues that even though the factors for evaluating these "other source" opinions are the same, the error was harmful because SSR 06-03p

---

[2]Acceptable medical sources include, among others, licensed physicians and licensed or certified psychologists. SSR 06-03p.

draws a distinction between these two sources. SSR 06-03p states that "an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source'" when, for example, "he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." *Id.* at *5. In this case, however, there is no basis for finding that Ms. Moretin's opinion was entitled to more than the "little weight" the ALJ accorded to it, or that it outweighed an "acceptable medical source". Thus, the ALJ's erroneous designation of Ms. Moretin as a "nonmedical source" was harmless.

SSR 06-03p states that when evaluating the opinions of "medical sources who are not 'acceptable medical sources,'" the factors the ALJ should consider include:

- How long the source has known and how frequently the source has seen the individual;

- How consistent the opinion is with other evidence;

- The degree to which the source presents relevant evidence to support an opinion;

- How well the source explains the opinion;

- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

- Any other factors that tend to support or refute the opinion.

SSR 06-03p at *4-5.

Ms. Moretin opined that SAH had marked limitations in the domains of acquiring and using information, attending and completing tasks and interacting and relating with others. The ALJ assigned "little weight" to Ms. Moretin's assessment, explaining:

> Ms. Moretin based her assessment on the reports of the claimant's mother. Her assessment is inconsistent with her own treatment notes that show that the claimant is able to stay on task and has average intellect and memory for his age. She also

6

> notes in her own treatment records that the claimant has age appropriate judgment. She gave him a Global Assessment of Functioning ("GAF") of 55. In her July 16, 2010, correspondence with the claimant's representative, Ms. Moretin gave the claimant a GAF of 60. According to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), a GAF of 51 to 60 indicates moderate symptoms, not marked. Her assessment is also not consistent with school reports from people who see the claimant 5 days a week, 10 months a year, since he was in kindergarten, which state that the claimant has always done well academically and completes tasks without assistance.

T.17.

Plaintiff argues that the ALJ noted a GAF[3] score of 55,[4] but that Ms. Moretin indicated a GAF of 50.[5] Ms. Moretin noted GAF scores of: 50 and 55 on December 17, 2008. T.335, 371. The reason for the disparity is that in her progress notes, the options for "Axis V" were in increments of ten, i.e., 40, 50, 60. (December 17, 2008), T.335, on the Listing Questionnaire she completed, she did not have options and stated "55" on the line next to "Axis V." In a letter dated July 16, 2010, Ms. Moretin stated that SAH's GAF was 60. T.403. T.371. Thus, the ALJ's recitation of SAH's GAF scores as 55 and 60 is supported by the record.

---

[3] GAF rates overall psychological functioning on a scale of 0–100 that takes into account psychological, social, and occupational functioning. A GAF in the range of 61 to 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 34 (4th ed. rev.2000).

[4] A GAF in the range of 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM–IV, at 34.

[5] A GAF in the range of 41 to 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM–IV, at 34.

Ms. Moretin opined that SAH had marked limitations in the domains of acquiring and using information, attending and completing tasks and interacting and relating with others.[6] Plaintiff argues that Ms. Moretin's report is consistent with school reports: "To the extent that the school implemented an IEP and 504 plan, suspended him multiple times and placed him on in-school suspension, the opinion is consistent with the school records." Plaintiff argues that the ALJ's evaluation of Ms. Moretin's opinion "did not comply with the applicable legal standards" and that "as the only treating source who offered an opinion of limitations, [her opinion] was entitled to great weight."

When evaluating Ms. Moretin's opinion, the ALJ acknowledged SSR 06-03p and considered the relevant factors but found that her opinion was not consistent with her own treatment notes or SAH's school records. Ms. Moretin reported that SAH "was cooperative, maintained good eye contact and able to stay on task", "was oriented to time, place, and person and showed average intellect and memory for a 10 year old child", "has fair insight and judgment for a 10 year old male child" but was at "[m]oderate risk due to suicidal statements and physical aggression at school." T.370. In a letter dated July 16, 2010, Ms. Moretin stated:

> Due to client's inability to focus and distractibility, he continues to have much difficulty completing necessary tasks at home and school. He requires much prompting from others in order to get things done. Academically, it appears he performs well, possibly influenced by medication. He can complete tasks with few reminders. Without medication, it becomes more difficult for him to do [sic] follow directions without assistance.

T.403. According to SAH's IEPs, the principal concern was his behavior, not his academic

---

[6]The ALJ found, however, that the evidence supported a finding that SAH had a marked limitation in the domain of interacting and relating with others. This domain is not at issue. Indeed, there is substantial evidence in the record of SAH's marked limitation in this area. The school disciplinary reports alone, show that SAH struggles greatly in this area. T.173-298.

8

performance or his ability to pay attention and concentrate. T.203-211 (IEP and Behavior Intervention Plan). Although the IEPs indicate that at times, he required prompting from his teachers, see, e.g. T.204 ("has a tendency to 'slack' on his work and needs to be held accountable for doing his best work all the time."), he was "performing on grade level in reading and in math" and "is a very bright and capable student". T.204. Thus, the ALJ's finding that Moretin's opinion is inconsistent with her treatment notes and other evidence in the record is supported by substantial evidence.

### C. Caring for Self

The only domain finding that plaintiff challenges directly is the ALJ's conclusion that SAH has a "less than marked limitation" in the domain of caring for self:

> The Administrative Law Judge finds that this limitation is moderate in severity. The claimant has made some statements that he wanted to commit suicide. His mother reports that he has punched himself. The claimant's mother told the consultant examiner [that] the claimant can dress, bathe and groom himself without difficulty and does help with household chores. The claimant does present with a neat and clean appearance. The claimant's mother reported to the consultant examiner [that] the claimant travels in his neighborhood by himself.

T.24 (internal citations omitted).

The regulations state:

> In this domain, we consider how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area.
>
> . . .
>
> (iv) School-age children (age 6 to attainment of age 12). You should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself), although you may still need to be reminded sometimes to do these routinely. You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad. You should begin to develop understanding of

9

> what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you. You should begin to imitate more of the behavior of adults you know.

20 C.F.R. § 416.926a(k).

Plaintiff argues that the opinions of Ms. Moretin and Dr. Moore opinion support a finding that SAH has a marked limitation in this domain. Moretin characterized SAH's limitation in this domain as "none to slight" and stated that he "appeared net and clean and dressed appropriately" and that he "was cooperative, maintained good eye contact and [was] able to stay on task." T.370. Therefore, even if accorded controlling weight, Moretin's opinion would no support a finding of a marked limitation in this domain.

The consultative psychologist, Mary Ann Moore, Psy.D., examined SAH on January 21, 2009. T.337. Dr. Moore described SAH's mode of living as follows:

> The claimant can dress, bathe, and groom himself. He does help with the household chores, generally without arguments. He is allowed to travel in the neighborhood by himself and does follow the rules. He reports he has friends. He likes to play game, including football, with them. He feels his family relationships are good. [SAH] reports he loves math, baseball, and football. He gets up, goes to school comes home around three o'clock, does his homework. He sometimes will get frustrated, but he gets it sown [sic]. Watches TV. Bedtime is between 8:00 and 8:30. He reports sometimes he is up until three o'clock in the morning.

T.339. Plaintiff argues that Dr. Moore's opinion supports a finding of a marked limitation in SAH's ability to care for himself because she stated that: "He is not aware of danger and does not always take needed precautions." T.340. Dr. Moore also stated, however, that SAH was "generally cooperative" to questioning, his hygiene was "fair" and that his insight and judgment appeared "fair". T. 338-40. Further, the "Teacher Questionnaire", which SAH's fifth grade teacher, Todd Marris, completed, indicates that SAH had no problems in the domains of: acquiring and using information, attending and completing tasks, interacting and relating with

10

others, moving about and manipulating objects, or caring for himself. T.156-60. Mr. Marris commented:

> [SAH] is a very bright and attentive student. He is a typical fifth grade boy who enjoys sports and physical activity. [SAH] has been very well-behaved in the classroom environment, completes his assignments in a timely fashion, and completes his homework on a regular basis.
> When [SAH] has had difficulty in school it usually occurs outside of class, such as in a special area subject. Part of the reason for the trend may be the difference of environment and teaching style.

T.162.

Regarding SAH's hygiene, plaintiff testified: "He's supposed to brush his teeth two times a day, and he's supposed to shower, he does it at will. You know, if I don't stay on him about it." T.42. She further stated that because he constantly "skip[s] days brushing his hair", she shaves his head. T.43. Accordingly, the ALJ's finding that SAH suffered less than a marked limitation in his ability to care for himself is supported by substantial evidence.

### D. Credibility

Plaintiff argues that the ALJ improperly discounted her testimony. (Dkt. No. 16, p. 14). SSR 96-7p requires ALJs to articulate the reasons behind credibility evaluations:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." ... The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

1996 WL 374186, at *4 (S.S.A. Jul. 2, 1996).

As a fact finder, the ALJ is free to accept or reject testimony of a claimant's parent. *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988). A finding that a

witness is not credible must be set forth with sufficient specificity to permit intelligible review of the record. *Id*. (citing *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 648 (2d Cir. 1983). If the child claimant is unable adequately to describe his symptoms, the ALJ must accept the description provided by testimony of the person most familiar with the child's condition, such as a parent. *Jefferson v. Barnhart*, 64 F. App'x 136, 140 (10th Cir. 2003). In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying. *Id*. (citation omitted) (holding that the finding that the mother's testimony was, "credible only to the extent that [it was] supported by evidence of record" is "standard boilerplate language" and an insufficient explanation of credibility).

Where a significant portion of the record supports the testimony, the ALJ must explain why he has determined that the testimony is not credible. *Smith v. Barnhart*, 157 F. App'x 57, 62 (10th Cir. 2005); *see also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (ALJ's conclusion that the mother's testimony was, "unconvincing, not substantiated by objective medical findings, and credible only to the extent that claimant's impairments have not produced marked and severe limitations" was insufficient as significant probative evidence supported testimony).

In this case, the ALJ thoroughly discussed plaintiff's testimony but found certain aspects were not supported by the evidence in the record. For example, plaintiff testified that SAH is unable to sit still, does not follow directions and cannot multitask. As the ALJ pointed out, however, his school records show that while SAH has some difficulty sitting still, it does not interfere with his ability to complete his school work, he does well academically and needs no modifications of his schoolwork or tests. T.15. The ALJ also found that plaintiff's statements regarding SAH's inability to care for himself were inconsistent with evidence from Moretin and

12

the consultative examiner, which indicated that "appeared net and clean and dressed appropriately" and that he "was cooperative, maintained good eye contact and [was] able to stay on task." T.370. Moore indicated that SAH was able to dress, bathe and groom himself. T.339. Thus, the ALJ's assessment of plaintiff's credibility is supported by substantial evidence.

## III. CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court is directed to enter judgment for the Commissioner and **Close this Case**.

**IT IS SO ORDERED.**

Date: September 30, 2014

Norman A. Mordue
Senior U.S. District Judge